*☞ The following case has excited so much interest and curiosity, that it has been deemed proper to be inserted, although the original plan of this work did not extend to cases determined in the District Court of the U. States.*

October 1810.
Dis. Court U. S.

LIVINGSTON
vs.
D'ORGENOY.

### LIVINGSTON vs. D'ORGENOY.

THE original petition stated that the plaintiff was in possession of the Batture, a tract of land within the limits of the city of New-Orleans, and that the defendant ousted him of his possession, and still kept him out; besides a claim of one hundred and fifty thousand dollars, for damages, it concluded with a prayer that the plaintiff might be restored to his possession.

Proceedings staid by a third person.

THE defendant justified the ouster, as an official act, while he was Marshal of the U. States, in pursuance of an act of Congress, 8 *Laws U. S.* 317, and he denied any other removal, interference, or possession of the premises.

THE pleadings were amended by consent. The new petition stated the plaintiff's title to the premises, the claim set up by the corporation of the city, the judgment thereon and a perpetual injunction quieting his title, and the ouster. It concluded with a prayer for restitution and general relief.

To this amended petition, the defendant's answer was the same as to the original: except that the last clause (denying the removal, otherwise than as Marshal, the interference and possession) was omitted.

October 1810.
Dis. Court U. S.

LIVINGSTON
vs.
D'ORGENOY.

THE plaintiff demurred to the answer and the defendant joined in the demurrer.

WHEN the demurrer was about to be argued, the Attorney of the United States, *T. Robinson*, read the affidavit of James Mather, stating the possession of the United States, their exercise of acts of ownership on the premises, their officers having at one time allowed the people to take dirt therefrom, and at another recalled this permission, the want of interest in the defendant, and the deponent's belief that the sole object of the plaintiff was to gain possession and oust the United States.

THE Attorney next drew the attention of the Court to the original and amended pleadings. He observed that the first petition claimed one hundred and fifty thousand dollars, and the answer thereto denied every thing but the ouster, which it justified—that the second petition claimed no special damage, and the answer was amended by striking out whatever had been at first denied. On these suggestions he moved that the plaintiff be ordered to shew cause why the proceedings should not be stayed, as fictitious and collusive: and because too the defendant claimed not (notwithstanding his implied admission in the answer) any right of possession or property, in the premises, and therefore was entirely uninterested, while the interest of a third party, viz. the United States was sought to be affected, and the possession of the premises obtained from them.

On this the plaintiff offered to allow the U. States to be made parties to the suit; but the offer was not accepted; on the ground that the United States could not be made defendants in any case, and in the present could not make themselves plaintiffs, for no right of theirs had been violated and they had nothing to claim.

THE plaintiff next shewed cause. He denied the fiction and collusion, the want of interest in the defendant, and that, his only motive in bringing the suit was to affect the interest of the United States.

AT his request, and by consent, the defendant was sworn. He deposed that he did not claim any right of property or possession in the premises, and asserted he would not prevent the plaintiff from taking possession, if he attempted it. He admitted he had given his consent to the amendment of the pleadings, on the assurance he had received, that the plaintiff would claim no damages from him, and had no other object in view but the possession of the premises; and that if such assurance had not been given him, he never would have consented to the amendment.

HE declared that no communication, verbal or written, had passed between him and the plaintiff, except a letter announcing the plaintiff's intention to bring the suit.

THE Attorney having advanced, as a presumption of collusion, that Paillette, the general agent of the plaintiff, was the defendant's counsel, the plaintiff admitted the fact; but said that

M

October 1810.
Dis. Court U. S.

LIVINGSTON
*vs.*
D'ORGENOY.

Paillette had no other agency in the plaintiff's behalf, but receiving the petition, inclosed to him from New-York, filing it, and delivering the plaintiff's letter to the defendant.

PAILLETTE, being sworn, deposed he had given the defendant to understand that the plaintiff would not claim damages from him, and expected only to gain possession; and that he had advised the defendant to consent to the amendment.

A LETTER of the defendant to the Recorder was then read: it contained these expressions: " it appears that Mr. Livingston has desisted from all pursuit against me and that his only object is to be reinstated in his possession." In the conclusion, the defendant begged the Recorder not to communicate this information which he declared to appear to him very true.

ANOTHER letter was also read, in which the defendant declined allowing the law officers of the corporation to join his counsel in the defence of the suit.

THE *Attorney of the United States, Moreau* and *Martin* in support of the motion. Where proceedings are fictitious or collusive, and where they are set on foot for no other purpose than to affect the interest of a third party, the court will stay them on the application of the party liable to be injured. The ground upon which the court interferes in these cases is that the proceedings are a *contempt* of the court. *Dacosta* vs.

*Jones, Cowper* 729. *Coxe* vs. *Phillips, cases Temp. Hardw.* 237.

1. THE present suit is fictitious—and

2. Collusive.

3. It is set on foot for no other purpose than to affect the interest of persons not parties thereto.

I. It is fictitious. A suit may be called fictitious, when the parties, or one of them, have no existence *in rerum naturâ*, or as a corporation : or when one of them is *uninterested*, or stranger to the matter in dispute, and cannot be affected by the event, otherwise than by a liability to costs, which in such a case will be presumed to be intended to be paid by the other party, the person really interested, and for whose benefit the suit is brought.

IN the present case it is contended the defendant is wholly uninterested ; no damages are asked of him, he does not pretend to keep possession, so that he cannot lose any thing.

II. THE suit is collusive. Collusion is fraud, and therefore although it must be proved and is not to be presumed, direct and positive evidence of it is not to be expected. The proof must be composed of a number of circumstances, none of which are perhaps sufficient to satisfy the mind, but which from their coincidence command conviction. In the present case we have:

1st. THE suspicion which attaches in the selection of the plaintiff's agent as the defendant's attorney ;

October 1810.
Dis. Court U. S.

LIVINGSTON.
*vs.*
D'ORGENOY.

2d. THE refusal of the permission to the law-officers of the corporation to co-operate with the defendant's counsel;

3d. THE evidently concerted amendment of the petition and answer, the implied admission of the possession—the omission of the claim for damages being the clear consideration therefore;

4th. IF there had been no collusion, the defendant had an easy way to get rid of the suit by a disclaimer, by averring he was no longer Marshal.

III. THE suit is evidently set on foot for no other purpose than to affect the interest of persons not parties to it.

THE United States claim the premises: they have exercised an evident act of ownership, by dispossessing the defendant—the object of the suit is nothing but to regain the possession—they are not parties to the suit and their rights are to be affected by it, and the rights of no other person can thereby be affected.

No court will allow a possessory action to be carried against a person who is not in, and does not claim, possession.

W. caused a lease to be made by a stranger to B. and then caused B. to bring an ejectment against J. S., in order and with intent to get R. out of possession—this was held to be an abuse of the court. 5 *Viner* 444.

IT is a contempt in an attorney to deliver a declaration in ejectment to a man who feigns himself tenant and so to obtain possession. *Mod. Cases*, 16.

Or to bring a *precipe quod reddat*, against a person whom the party knows to have nothing in the land, and to gain possession against the ter-retenant, 2 *Inst.* 215.

Or to make a lease to A. of the land of B. and afterwards procure B. to bring an action against the casual ejector, *Sav.* 31.

Proceedings in an ejectment staid till the plaintiff gave notice where the lessee lived, *Shirt* vs. *King*, 2 *Strange* 681.

It is a contempt of court to bring a fictitious suit, 1 *Comyns* 593. 4 *Durnford & East* 402. or to use its process as a handle to do wrong. 5 *Vin.* 443. Without the essential aid of learned counsel, who, by previously investigating a complicated case, are enabled to present, in a clear and distinct view, the principles and authorities upon which it is to be determined, the best informed judge is liable to err and the most cautious to mistake. If the arguments of the bar are of such importance in the rightful determination of a cause, it is of the utmost importance that such arguments should be earnestly and fairly made. They will not be earnestly made, if the person who employs the counsel has no interest in the object in dispute: counsel will be careless, where the client is easy. They will not be fairly made, if the client desires that the point be determined against him. Nothing but interest will draw forth the solution of latent difficulties. The court will not pronounce with safe-

October 1810.
Dis. Court U. S.

LIVINGSTON
*vs.*
D'ORGENOY.

ty on an argument in which the industry of the maker has not been spurred up by the interest of the client.

THE plaintiff did not controvert the principle laid down by the supporters of the motion, but denied the existence of any of the facts on which it was grounded.

HE introduced the affidavit of Paillette and Alexander, the defendant's counsel, denying the collusion. The former stated that in informing the defendant that no damages were expected from him, he had acted from the influence of his own conclusions, drawn from the amendment of the petition, and not from any communication with the plaintiff.

HALL, *District Judge.* It appears that the defendant is not in the least interested in the decision of this case : no damages are to be recovered of him, because none are prayed for : he is not to be deprived of possession, because he never had any ; and if ever he had, he has since ceased to hold it.

THE circumstance of Paillette being the plaintiff's agent and the defendant's counsel, at first blush might excite suspicion : but when it appears he has always been of counsel for the defendant, in his causes, collusion cannot be inferred from it.

ALTHOUGH there is no direct evidence of collusion between the parties, yet it is certain a

kind of understanding exists between them. The
impression made on the defendant's mind, clear-
ly was, that he was totally *hors de combat*, that no
damages were to be recovered of him, and there-
fore he was totally uninterested, and became quite
indifferent as to the issue of the suit: for, he has
told us he had neither possession nor property,
and he should have averred so in the pleadings.
I do not think that his refusal to blend his inte-
rest with that of the corporation, ought to have
any influence in the decision of the motion.

It is clear that the United States claim the
premises. They have dispossessed the plaintiff,
and his object now is to regain the possession.
If any one is in possesion, the United States are ;
and this fact is sworn to by Mather.

The interests of the United States alone are
at stake. The defendant cannot be expected to
defend them. It is immaterial to him what opi-
nion the court pronounces on the legality of the
President's orders, or whether it adjudges the pos-
session of the batture to the plaintiff or not.
There is nothing adverse in the case.

Courts of justice are to decide on real contests,
they are never to be used as instruments to work
injustice, wound the feelings or affect the inte-
rest of others, through the intervention of fic-
titious or uninterested parties.

The defendant can only be considered as a
FEIGNED *ejector*. It is a standing rule in actions
of ejectments that no plaintiff shall proceed to
recover the land without giving the tenant in

October 1810.
Dis. Court U. S.

LIVINGSTON
vs.
D'ORGENOY.

possession a declaration and making him a defendant. Otherwise the court would be instrumental in doing an injury to a third person; because a declaration might be served on a *stranger*, a feint defence made and a verdict, judgment and execution obtained, without the tenant having any notice of it. This would be the case, if the court were to proceed in this suit. The defendant is no longer an officer of the United States, it would be wrong to decide on their rights in a suit against him.

IF the United States, who claim the premises cannot be made defendants, it becomes their dignity to establish a tribunal in which the controversy may be determined. It is much regretted, that it has not been already done.

PROCEEDINGS are not often staid at the instance of a third party; but the court certainly possess the power to stay them. In the case cited from *Cowper*, lord Mansfield said, "If the Chevalier " d'Eon had applied to the court, as a person " whose feelings were sought to be wounded in " the suit, and prayed that the suit might be stop- " ped, the court would have instantly done it."

PROCEEDINGS STAYED.